

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SAUL, JUAN, GUADALUPE and DAVID CASTELLANOS, | ) ) ) |
| Plaintiffs, | ) No. 05 C 1480 ) |
| v. | ) Wayne R. Andersen ) District Judge |
| CITY OF ELMHURST and UNKNOWN OFFICERS, MICHAEL F. SHEAHAN, SHERIFF OF COOK COUNTY, and UNKNOWN SHERIFF'S DEPUTIES, | ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM, OPINION AND ORDER

Plaintiffs Saul, Juan, Guadalupe and David Castellanos filed this lawsuit against the City of Elmhurst and unknown police officers of the Elmhurst Police Department (collectively, the "Elmhurst defendants") and Cook County Sheriff Michael F. Sheahan and unknown sheriff's deputies (collectively, the "Cook County defendants") for alleged civil rights violations. Count I of plaintiffs' first amended complaint asserts a failure to train claim against the Elmhurst defendants pursuant to 42 U.S.C. § 1983. Count II asserts conspiracy and failure to train claim in violation of 42 U.S.C. § 1983 against all defendants. Count III asserts Illinois state law claims for unlawful search, seizure, arrest and invasion of privacy against the Elmhurst defendants. The Elmhurst defendants and the Cook County defendants have filed separate motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## BACKGROUND

For the purposes of this motion, the court assumes the facts stated in plaintiffs' first amended complaint as true. Plaintiffs assert that on March 14, 2003 officers of the Elmhurst police department approached plaintiff Juan Castellanos as he was entering his home at 545 East Harvard Street in Elmhurst, Illinois, which is located in unincorporated Cook County. Plaintiffs claim that the Elmhurst police officers demanded that Juan sign a search warrant authorizing them to search the basement of his home and that, if he did not give consent, he and his family would be removed from their home. Plaintiffs assert that after obtaining consent the Elmhurst officers searched not only the basement but other areas of the residence as well and that in the course of the search, the officers seized several grams of marijuana and two leafy plants (purportedly marijuana as well) from the basement area.

Plaintiffs assert that Saul Castellanos, who was not present at the time of the search, was told to come to the Elmhurst Police Department to claim the confiscated property. Plaintiffs claim that when Saul arrived at the station, Elmhurst police officers interrogated him about the drugs that had been seized and arrested him for possession of marijuana.

Plaintiffs then assert that, because the residence is located in unincorporated Cook County, the Elmhurst Police Department did not have jurisdiction and that the Elmhurst police officers then contacted the Cook County Sheriff's Department in Maywood, Illinois. Plaintiffs further assert that the Cook County defendants agreed to take custody of Saul and possession of the drugs that were seized. Saul was transferred to custody of the Cook County Sheriff's Department and was released later that same day.

## DISCUSSION

In reviewing a Rule 12(b)(6) motion to dismiss, the court will view all facts in the light most favorable to the plaintiff, and a complaint will not be dismissed unless it is clear that the plaintiff cannot prove facts consistent with its allegations that would entitle it to relief. *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999).

### I.     Elmhurst Defendants' Motion to Dismiss

#### A.     Count I Fails to State a Claim

Count I of plaintiffs' first amended complaint asserts a claim against the City of Elmhurst pursuant to 42 U.S.C. § 1983 for failure to properly train its unknown officers. Specifically, plaintiffs allege:

> The Elmhurst Defendants were not properly trained in the law pertaining to:
>
> i.     The territorial limits of the City of Elmhurst's jurisdictional boundaries;
>
> ii.    The proper procedure for obtaining a *consent warrant* without using threats or scenarios that would cause extreme duress, i.e., by threatening to board-up the Castellanos's home for refusal to consent;
>
> iii.   The law prohibiting ethnic profiling of citizens of Hispanic descent that Defendants targeted (under these facts and others i.e., traffic stops) as citizens less familiar with the laws of the United States, especially in connection with the threat to consent to a search or have the residence boarded-up;
>
> iv.    The law(s) prohibiting the tactics used to obtain an ill-gotten 'consent warrant', with expressed limitations, that notwithstanding the limitations, resulted in the search of the entire residence, the ill-gotten items seized and the arrest of SAUL;

3

> v. The prohibitions against the transfer of the entire unlawful conduct of the Elmhurst Defendants to the Cook County Sheriff's Office as if the tainted conduct of the Elmhurst Defendants could somehow be purged or otherwise ratified by passing the illegally obtained '*consent warrant*' paper work, the fruits of the property unlawfully seized, and the unlawful arrest and seizure of the person of SAUL over to the custody of the Cook County Sheriff; and
>
> vi. The unlawful questioning and interrogation of a minor (DAVID) (5th Amendment) outside the presence and over the objections of his parents
>
> and #2 under color of law and their office, conducted a surprise raid on the residence of Plaintiffs without legal authority and without any jurisdiction whatsoever in that the address of the residence was located in un-incorporated Cook County, which ELMHURST Defendants knew or should of known was not within the jurisdictional boundaries or territory of the City of Elmhurst.

Plaintiffs' First Am. Comp. at ¶27

In order to state a claim against a municipality under 42 U.S.C. § 1983, a plaintiff must identify a "policy" or "custom" that caused the plaintiff's injury. *See Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). The Seventh Circuit has recognized three ways in which a municipality's policy can violate an individual's civil rights: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. *See McTigue v. City of Chicago*, 60 F.3d 381, 382 (7thCir. 1995). In order to prevail, plaintiffs must prove a direct causal link between the municipal policy or custom and the alleged deprivation of rights. *See Sims v. Mulcahy*, 902 F.3d 524, 542 (7th Cir. 1990).

4

There are limited circumstances in which an allegation of a "failure to train" can be the basis of municipal liability under 42 U.S.C. § 1983. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989). To state a failure to train claim under § 1983, a plaintiff must show that: (1) the city's employee violated his constitutional rights; (2) the city had a policy or custom of failing to train its employees; and (3) the failure to train caused the constitutional violation. *See Roach v. City of Evansville*, 111 F.3d 544, 549 (7th Cir. 1997). As such, establishing municipal liability under *Monell* based on evidence of inadequate training requires proof of "deliberate indifference" on the part of the local government. *See City of Canton v. Harris*, 489 U.S. 378, 387 (1989); *Sornberger v. City of Knoxville, Illinois*, 434 F.3d 1006, 1029 (7th Cir. 2006). Deliberate indifference may be shown in one of two ways: (1) when a municipality fails provide adequate training in the light of foreseeable consequences of constitutional violations; or (2) when a municipality fails to provide further training after learning of a pattern of constitutional violations through repeated complaints. *See Sornberger*, 434 F.3d at 1030; *Robles v. City of Fort Wayne*, 113 F.3d 732, 735 (7th Cir. 1997); *Dunn v. City of Elgin, Illinois*, 347 F.3d 641, 646 (7th Cir. 2003).

Although the Supreme Court has held that no heightened pleading requirements exist with respect to section 1983 cases, *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993), a plaintiff's complaint must nonetheless contain "assertions . . . with sufficient particularity to orient the defendant to the basic nature of the plaintiff's alleged injury." *Leone v. Village of Oak Park*, 1995 WL 347941 (N.D.Ill.1995), citing *Baxter by Baxter v. Vigo County School Corp*, 26 F.3d 728, 736 (7th Cir. 1994). As such, "[b]oilerplate allegations of a municipal policy, entirely

5

lacking in any factual support that a [municipal] policy does exist, are insufficient." *Baxter*, 26 F.3d at 736, quoting *Sivard v. Pulaski County*, 17 F.3d 185, 188 (7th Cir.1994) (other citations omitted).

The allegations of plaintiffs' first amended complaint do not place this case within one of the three recognized circumstances in which a municipality can be found to have violated a person's civil rights. There are no allegations regarding any express policy with regard to the City of Elmhurst and its officers conducting unauthorized extraterritorial searches. There are no allegations that conducting extraterritorial searches is a widespread and well-settled practice of the Elmhurst defendants. There are no allegations that the plaintiff's detention in this case was caused by a person with final authority.

Plaintiffs' first amended complaint also does not contain sufficient allegations that there were constitutional deprivations that are so widespread or longstanding that the Elmhurst defendants must have been aware of them, but chose to be deliberately indifferent to the need for corrective action. Plaintiffs' allegations do not establish such indifference. Plaintiffs merely rely on boilerplate allegations, entirely lacking in factual support that such a policy exists, in order to create a claim based on what appears to be nothing more than a random, isolated incident. Courts have consistently held that the isolated acts of officers without authority to set municipal policy do not result in section 1983 violations as such acts will not be interpreted to represent an entrenched practice or formal policy unless a pattern or series of incidents can be proven. *See Sims*, 902 F.2d at 542. No such pattern or series of incidents has been alleged in this complaint.

Plaintiffs argue that the allegations in their first amended complaint are sufficient to place the Elmhurst defendants on notice that "its express policy of extraterritorial enforcement of search warrants is unlawful." Plaintiffs' Resp. Br. at 8. However, a review of the allegations in the first amended complaint reveals that plaintiffs have not alleged even in a conclusory fashion that the City of Elmhurst had an express policy of extraterritorial enforcement of search warrants or any other illegal custom or policy. Rather, plaintiffs make this assertion for the first time in their response brief. "[A]llegations contained in a plaintiff's responses to a motion to dismiss cannot be utilized to salvage a deficient complaint." *McAfee v. City of Chicago*, 1997 WL 473870, at *5 (N.D. Ill. Aug. 14, 1997) (dismissing § 1983 claim against the City of Chicago).

Even the liberal pleading guidelines of Federal Rule of Civil Procedure 8(a) do not save plaintiffs' complaint. For example, plaintiffs allege that the Elmhurst defendants were not properly trained in the law pertaining to the territorial limits of the City of Elmhurst's jurisdiction. Even assuming these facts as true, this allegation falls short of alleging that the City of Elmhurst had a custom or policy of failing to train its police officers and that the alleged failure to train caused the constitutional violations suffered by plaintiffs. *See Roach*, 111 F.3d at 549.

Moreover, no custom or policy can be inferred from plaintiffs' first amended complaint because plaintiffs have pointed only to a single, isolated event – the search on March 14, 2003. Plaintiffs do not allege that the City of Elmhurst failed to train its employees to handle a recurring situation or that the City failed to provide further training after learning of a pattern of constitutional violation. For these reasons, plaintiffs have failed to state a claim in Count I.

B. Count II Fails to State a Claim

In Count II of the first amended complaint, plaintiff Saul Castellanos claims that the Elmhurst defendants and the Cook County defendants conspired to violate his federal constitutional rights. Specifically, the complaint alleges:

> The ELMHURST Defendants by and through its Police Officers #1 and #2 (and other unknown police officers) conducted a surprise raid on the residence of Plaintiffs without legal authority and without any jurisdiction in that the address of the residence was located in un-incorporated Cook County and not within the jurisdictional limits of Elmhurst, a fact so basic that the ELMHURST Defendants knew or should have known,
>
> Defendant, MICHAEL F. SHEAHAN by and through his own Deputy #3 and unknown others, operating under their own un-Constitutional policies, and/or accepted un-Constitutional practices and/or lack of training in appropriate and lawful Constitutional policies, ratified this behavior and joined in the cover-up of the Elmhurst Defendants unconstitutional behavior. Thereafter, on the same day, SHERIFF'S Defendants released SAUL in an attempt to distance and purge themselves from the certain and unquestionable liability they knew or should of known they participated in when they accepted custody and control of Saul and his property, both of which had been illegally obtained by and from the ELMHURST defendants.

Plaintiffs First Am. Compl. at ¶¶ 32-33. Nothing in these allegations sets forth a municipal custom or policy that caused plaintiff's injuries. Count II is entirely silent as to any policy or custom of the City of Elmhurst that causes the alleged injuries. As such, Count II fails to state a claim.

C. State Law Claims Are Barred by a One-Year Statute of Limitations

Count III of the first amended complaint asserts state law claims for unlawful, search, seizure, arrest and invasion of privacy. Under 745 ILCS 10/8-101(a), no civil action may be commenced in any court against a local entity or any of its employees for any injuries unless it is commenced within one-year of the date that the injury occurred

8

or the cause of action accrued. The claims alleged in the first amended complaint arise from the same set of facts that occurred on March 14, 2003. Plaintiffs did not file their complaint until March 14, 2005, which is two years after the injury occurred. Thus, plaintiffs' state law claims are barred.

D. <u>Claims Seeking Punitive Damages Must Be Dismissed</u>

It is well-settled that a governmental body cannot be held liable for punitive damaged in a custom and policy claim asserted pursuant to 42 U.S.C. § 1983. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S.C. 247, 271 (1981). Accordingly, plaintiffs' punitive damages claims against the City of Elmhurst in Counts I and II are dismissed. Further, 745 ILCS 10/2-102 prohibits punitive damages against a municipality for claims arising under state law. *See Treece v. Village of Naperville*, 903 F. Supp. 1251, 1260 (N.D. Ill. 1995). Thus, the punitive damages claims in Count III against the City of Elmhurst based on sate law claims also are dismissed.

## II. Cook County Defendants' Motion to Dismiss

Count II of plaintiffs' first amended complaint a claim against the Cook County defendants for failure to properly train its unknown officers and for conspiracy with the Elmhurst defendant to violate Saul Castellanos' constitutional rights. Specifically, plaintiffs allege:

> The [Cook County defendants] were not properly trained in the law pertaining to:
>
> I. The un-assignable nature of an unlawful, jurisdiction-less search, seizure, interrogation and arrest, unlawfully carried out by Elmhurst Defendants;

9

ii. The proper procedure for obtaining a consent warrant without using threats or scenarios that would cause extreme duress, i.e., *by* threatening to board-up the CASTELLANOS's home for refusal to consent;

iii. The law prohibiting ethnic profiling of citizens of Hispanic descent that Defendants targeted (under these facts and others i.e., traffic stops) as citizens less familiar with the laws of the United States, especially in connection with the threat to consent to a search or have the residence boarded-up;

iv. The law(s) prohibiting the tactics used to obtain an ill-gotten '*consent warrant*', with expressed limitations, that notwithstanding the limitations, resulted in the search of the entire residence, the ill-gotten items seized and the arrest of SAUL;

v. The prohibitions against the transfer of the entire unlawful conduct of the Elmhurst Defendants to the Cook County Sheriff's Office as if the tainted conduct of the Elmhurst Defendants could somehow be purged or otherwise ratified by passing the illegally obtained '*consent warrant*' paper work, the fruits of the property unlawfully seized, and continuing the unlawful arrest and seizure of the person of SAUL over to the custody of the Cook County Sheriff; and

vi. The laws against conspiring to violate SAUL'S Constitutional rights under the 4th, 5th and 14th Amendments to the U.S. Constitution, which ELMHURST and COOK COUNTY SHERIFF Defendants violated when they met and COOK COUNTY Defendants decided to inherit the particular defects (i.e., the invalid warrant, search, seizure of property, invasion of privacy, damage to property, outrageous high pressure interrogation of DAVID (16) a minor child and arrest of SAUL) of the botched raid on the home of the Plaintiffs and in doing so even acted out a constructive conversion of the ill-gotten property taken from the CASTELLANOS home and converted it to their own custody, not for use as evidence of a crime, but for sole purpose of purging the ELMHURST Defendants of their illegal seizure and unlawful custody of the property.

Plaintiffs' First Am. Compl. at ¶ 31.

10

As stated discussed above, although plaintiffs allege a conspiracy between the Elmhurst defendants and the Cook County defendants to deprive plaintiffs' constitutional rights, plaintiffs have failed to state a sufficient allegations to support a colorable conspiracy claim.

Count II also alleges that the Cook County Sheriff's Department failed to train their deputies in the unassignable nature of an unlawful, extraterritorial search, seizure, interrogation and arrest allegedly carried out by the Elmhurst defendants and in the proper procedure for obtaining consent to search a home. According to the allegations in plaintiffs' first amended complaint, the actions of the Elmhurst defendants are attributable to the Cook County defendants and are sufficient to place the Cook County defendants on notice that these alleged policies are unlawful. Plaintiffs, however, have failed to allege any specific Cook County policy or custom that led to the deprivation of any of plaintiffs' constitutional rights. Plaintiffs also have not alleged any recurring violation or a pattern of constitutional violations to put the Cook County defendants on notice of such a practice. As such, Count II of plaintiffs' first amended complaint fails to state a claim against the Cook County defendants and must be dismissed.

## CONCLUSION

The City of Elmhurst's motion to dismiss [34] is granted, and Cook County Sheriff Michael Sheahan's motion to dismiss [37] is granted.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: September 28, 2006